UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMIE NAVARRO,

    Plaintiff,

v.                                                             Case No.: 3:26-cv-1878

SUNSHINE RESTAURANT PARTNERS,
LLC
d/b/a IHOP, a Florida limited
liability company,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Jamie Navarro, by and through her undersigned counsel, hereby

sues Defendant, Sunshine Restaurant Partners, LLC d/b/a IHOP, and alleges as

follows:

**JURISDICTION AND VENUE**

1. This is an action for damages and equitable relief pursuant to the

Florida Private Sector Whistleblower Act, §§ 448.101–448.105, Florida Statutes

(the "FWA"); the Taxpayer First Act, 26 U.S.C. § 7623(d) (the "TFA"); the anti-

retaliation provision of the Fair Labor Standards Act, 29 U.S.C. §§ 215(a)(3) and

216(b) (the "FLSA"); and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

1

2.      This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, pursuant to 26 U.S.C. § 7623(d)(2)(A) (which confers jurisdiction over TFA retaliation actions without regard to the amount in controversy), and pursuant to 29 U.S.C. § 216(b).

3.      This Court has supplemental jurisdiction over Plaintiff's FWA claim pursuant to 28 U.S.C. § 1367(a) because that claim arises from the same nucleus of operative facts and forms part of the same case or controversy as Plaintiff's federal claims.

4.      Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred at Defendant's restaurants in Clay County and St. Johns County, Florida, within the Jacksonville Division. M.D. Fla. Local Rule 1.04(b).

## PARTIES

5.      Plaintiff, Jamie Navarro ("Ms. Navarro"), is an adult resident of Green Cove Springs, Clay County, Florida. Ms. Navarro is Jewish; her Jewish identity is a racial, ethnic, ancestral, and religious characteristic. At all material times, Ms. Navarro was an "employee" of Defendant within the meaning of the FWA, the FLSA, and the TFA.

6.      Defendant, Sunshine Restaurant Partners, LLC d/b/a IHOP ("Defendant" or "SRP"), is a Florida limited liability company that owns and

2

operates IHOP restaurants in Florida, including Store 36-107, located at 315 Blanding Boulevard, Orange Park, Clay County, Florida, inside a Days Inn hotel, and Store 179, located in St. Augustine, St. Johns County, Florida.

7. At all material times, Defendant employed ten or more persons and was an "employer" within the meaning of the FWA, § 448.101(3), Florida Statutes; was an enterprise engaged in commerce and an "employer" within the meaning of the FLSA, 29 U.S.C. § 203; was an employer subject to 26 U.S.C. § 7623(d); and was subject to 42 U.S.C. § 1981.

8. At all material times, Defendant acted through its managers, officers, and agents, including General Manager Dzenita Buza ("Buza") (Orange Park), District Manager Adrian Walden ("Walden"), General Manager Carol Long ("Long") (St. Augustine), Area Director Mandy Mahler ("Mahler"), Bill Gowanloch ("Gowanloch"), a representative in Defendant's corporate office, and Human Resources representative Claudia Rodriguez ("Rodriguez").

## SATISFACTION OF CONDITIONS PRECEDENT

9. No administrative exhaustion is required for Plaintiff's FWA claim, her FLSA retaliation claim, or her 42 U.S.C. § 1981 claim, each of which is brought within the applicable limitations period.

10. On or about December 19, 2025, within 180 days of her July 19, 2025 termination, Plaintiff filed a complaint of retaliation under the TFA with the United

3

States Department of Labor, Occupational Safety and Health Administration ("OSHA"), pursuant to 26 U.S.C. § 7623(d)(2).

11.    More than 180 days have elapsed since the filing of Plaintiff's OSHA complaint, the Secretary of Labor has not issued a final decision, and the delay is not due to any bad faith on the part of Plaintiff. Plaintiff notified OSHA in writing of her intent to proceed in federal court, and OSHA suspended its administrative investigation. A copy of OSHA's suspension letter is attached as Exhibit A. Plaintiff is therefore entitled to bring this action for de novo review pursuant to 26 U.S.C. § 7623(d)(2)(A), and will provide OSHA with a copy of the file-stamped complaint within seven days of filing in accordance with 29 C.F.R. § 1989.114(b).

12.    All other conditions precedent to the filing of this action have been performed, have occurred, or have been waived.

**GENERAL ALLEGATIONS**

13.    In or around late 2024, Defendant hired Ms. Navarro as a server at its IHOP Store 36-107 in Orange Park, Clay County, Florida, which operates inside a Days Inn hotel.

14.    Ms. Navarro was a valued and well-regarded server. Customers praised her by name, management recognized her work, and before the events described below she had no write-ups, no complaints against her, and no disciplinary history of any kind.

4

15.    Ms. Navarro is Jewish. Throughout her employment at the Orange Park store, General Manager Buza repeatedly told Ms. Navarro that she was not allowed to state or tell customers that she was Jewish.

16.    Buza's instruction was not an isolated remark. It was a standing directive that remained in effect for the months Ms. Navarro worked at the Orange Park store, requiring her to conceal her Jewish identity from customers every shift she worked, as a condition of her employment.

17.    Defendant did not require servers outside Ms. Navarro's protected class to conceal their race, ethnicity, or identity from customers. Servers who were Caucasian, Hispanic, or African American were not barred from disclosing or expressing their race or ethnicity to customers. Defendant imposed the concealment requirement on Ms. Navarro alone, because she is Jewish.

18.    During Ms. Navarro's employment at the Orange Park store, Buza — a salaried manager not authorized to receive tips — waited tables during business hours and rang in customer orders under the names of individuals who were not present and, in some cases, had never worked at the Orange Park store, including under the name "Caden Walden."

19.    "Caden Walden" is the son of District Manager Adrian Walden. Caden Walden was employed, if at all, at a different location and never worked at the Orange Park store.

5

20.    While posing as a server under these false identities, Buza took as many as ten tables during a shift, while tipped servers such as Ms. Navarro were left with as few as one table, directly reducing Ms. Navarro's tip income.

21.    The credit-card tips and the hourly wages rung under the "Caden Walden" name were directed to Caden Walden and to District Manager Walden, and that income flowed directly into District Manager Walden's household.

22.    Buza kept for herself all of the cash tips from the tables she worked under the false identities and did not share any portion of those tips with the tipped servers.

23.    Through this arrangement, income and wages actually earned by Buza were falsely attributed to another person under a false name and Social Security number; income and employment taxes were not properly withheld, reported, or paid over on that income; false wage and tax information was generated; and the amount of tax paid on the diverted income was reduced.

24.    Approximately $2,000 in sales were rung under the false "Caden Walden" identity at the Orange Park store.

25.    Ms. Navarro objected to and reported this conduct. She first raised the scheme verbally with management, and she was threatened with termination for doing so.

6

26. On or about March 12, 2025, a complaint describing the scheme was submitted to Defendant's corporate office through Ms. Navarro's mother, which stated that "the server reporting this can not do it under her name because she has already been retaliated against for bringing this issue to the manager & was threatened to be fired."

27. Rather than protect the complaint, Defendant disclosed it — including the complainant's personal information — to Buza, the very manager whose conduct it described. Buza then contacted Ms. Navarro's mother directly and harassed her about the complaint. Defendant's disclosure and Buza's response demonstrate that Defendant's management knew the complaint came from or through Ms. Navarro.

28. On or about March 23, 2025, Ms. Navarro reported to Defendant's management that Buza was working as a server and ringing orders under the false "Caden Walden" identity, that wages and tips were being diverted to Caden Walden and District Manager Walden, and that income was being misattributed and taxes were not being properly withheld or reported.

29. Ms. Navarro also telephoned Bill Gowanloch at Defendant's corporate office and reported the conduct to him directly.

7

30.     Ms. Navarro also complained to Defendant's management about Buza's discriminatory treatment of her, including the standing directive that she conceal her Jewish identity.

31.     Gowanloch stated that Defendant would investigate Ms. Navarro's complaint, and Defendant assigned the investigation to District Manager Adrian Walden — the same District Manager whose household was receiving the diverted tips and wages. No employees were interviewed, and Defendant concluded that no wrongdoing had occurred.

32.     On May 23, 2025, Ms. Navarro, through then-counsel, sent Defendant a demand letter by certified mail that detailed the false-identity tip scheme, expressly asserted that the manager's "working under false names, collecting tips meant for other employees, and distributing tips among unauthorized individuals" constituted "wage theft and a violation of the Fair Labor Standards Act (FLSA)," asserted claims of discrimination and retaliation, and demanded preservation of evidence.

33.     Following the May 23, 2025 letter, counsel engaged in further communications with Defendant's counsel concerning Ms. Navarro's claims.

34.     Immediately after Ms. Navarro reported the false-identity scheme, Buza cut Ms. Navarro's schedule from five shifts per week to two, while other servers continued to work full schedules. When Ms. Navarro asked about the

8

reduction, Buza responded: "It is what it is." Ms. Navarro was the only server working fewer than four shifts per week.

35.    Buza also reassigned Ms. Navarro's tables to newer servers with less tenure, reducing Ms. Navarro's earnings.

36.    Buza spread false and negative statements about Ms. Navarro to other employees and solicited written statements against her.

37.    On two occasions, Buza sent Ms. Navarro home from scheduled shifts for unfounded reasons, costing Ms. Navarro more than $200 in tips and sixteen hours of wages, of which Defendant reimbursed only $150.

38.    When Ms. Navarro requested a transfer to escape Buza's treatment, Defendant transferred her not to a comparable nearby store but to Store 179 in St. Augustine, St. Johns County, approximately one hour from her home, resulting in an approximately two-hour daily commute; Ms. Navarro was reassigned to an undesirable overnight shift and her remaining morning shift was removed. Ms. Navarro's tips on the overnight shift were drastically lower than her tips on the morning shift, substantially reducing her earnings.

39.    On June 17, 2025, Ms. Navarro worked a shift at the St. Augustine store. Consistent with management's routine practice of directing servers to clock out during slow periods to reduce labor costs, Ms. Navarro was clocked out during the late afternoon.

9

40.    Wayne Day, the General Manager of the Days Inn hotel in which the restaurant operates, personally asked Ms. Navarro to watch the hotel lobby while he attended to a guest, and Ms. Navarro did what Day had asked her to do.

41.    At 5:17 p.m. on June 17, 2025, Ms. Navarro sent Day a text message alerting him that a customer was waiting in the lobby.

42.    No one disciplined Ms. Navarro on or about June 17, 2025, and no one contemporaneously told her she had been observed sleeping.

43.    On July 12, 2025 — approximately three and a half weeks after June 17, 2025 — General Manager Long wrote in an email to Area Director Mahler: "I'm hesitant to formally document this behavior out of concern that doing so could be perceived as retaliation and potentially used against us in the lawsuit. I appreciate any feedback or advice on this." Mahler forwarded the email to Vice President Gowanloch and Human Resources representative Rodriguez, seeking "guidance on this before doing anything next."

44.    On July 19, 2025 — thirty-two days after June 17, 2025 — Defendant terminated Ms. Navarro's employment. The Disciplinary Action Form dated July 19, 2025 stated that Ms. Navarro "w[as] observed sleeping in the hotel lobby while in uniform during the course of [her] shift."

10

45.     Ms. Navarro was not sleeping, and she was not "during the course of [her] shift" — she was clocked out, at the direction of management's own labor practice, and was watching the hotel lobby at the hotel manager's request.

46.     The Disciplinary Action Form bears no employee signature and identifies no issuing manager; its "Goals/Corrective Behavior" and "Employee Comments" sections are blank; and Defendant skipped every progressive-discipline step listed on its own form, proceeding directly to termination of an employee with no disciplinary history.

47.     Buza, who rang approximately $2,000 in sales under a false identity, remains employed by Defendant, while Ms. Navarro, who reported that conduct and who had no disciplinary history, was terminated on an allegation the hotel's own General Manager did not witness.

48.     As a direct and proximate result of Defendant's conduct, Ms. Navarro has suffered lost wages, tips, and benefits; increased commuting and transportation costs; and emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life.

## COUNT I

## Florida Private Sector Whistleblower Act — Retaliation, § 448.102(3), Fla. Stat.

11

49. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 48 above, as if fully set forth herein.

50. Defendant, through its agents General Manager Buza and District Manager Walden, engaged in an activity, policy, and practice that is, by definition, in violation of law. By waiting tables and ringing sales and wages under the false identity of "Caden Walden" and of other persons who were not present or employed at the store, by diverting employees' tips and wages to Caden Walden and District Manager Walden, and by falsely attributing income and wages to another person under a false name and Social Security number, Defendant's activity, policy, and practice violated, among other laws: (a) the Fair Labor Standards Act — 29 U.S.C. § 203(m)(2)(B) (unlawful retention and diversion of employees' tips by a manager or supervisor), § 206 (minimum wage and forfeited tip credit), and §§ 211(c) and 215(a)(5) (maintenance of true and accurate payroll and wage records); (b) the internal revenue laws — 26 U.S.C. §§ 7201, 7202, 7204, 7206, 6051, 6053, 3402, 3102, 3111, and 3301–3311, and § 7434 (evasion of tax; willful failure to collect, withhold, account for, report, and pay over federal income, FICA, and unemployment taxes; and the making and filing of false wage and tax statements attributing income to another under a false name and Social Security number); (c) the prohibition on misuse of identity and Social Security numbers — 42 U.S.C. § 408(a)(7) and 18 U.S.C. §§ 1028 and 1028A; (d) Florida's

12

theft and fraud laws — §§ 812.014 (theft), 817.568 (criminal use of personal identification information), 817.034 (organized scheme to defraud), 817.02 and 817.03 (false personation), and 831.01–831.02 (forgery and uttering), Florida Statutes; (e) Florida's workers' compensation fraud law — § 440.105(4)(b)5., 6., and 9., Florida Statutes (false statements to avoid or diminish workers' compensation premiums; knowing misrepresentation or concealment of payroll material to premium computation; and presentation of false evidence of identity to obtain employment), and § 817.234, Florida Statutes (false and fraudulent insurance statements); (f) the reemployment-assistance and unemployment-tax laws — Chapter 443, Florida Statutes, by misreporting the payroll and wages on which reemployment taxes are computed; and (g) the federal wire-fraud and conspiracy laws — 18 U.S.C. §§ 1343 and 371.

51. Ms. Navarro objected to that activity, policy, and practice, including through her verbal reports to management, the March 12, 2025 corporate complaint, her telephone report to Gowanloch at Defendant's corporate office, and the May 23, 2025 demand letter.

52. Defendant thereafter took retaliatory personnel actions against Ms. Navarro within the meaning of § 448.101(5), Florida Statutes, including reducing her scheduled shifts, reassigning her tables, sending her home without pay,

13

transferring her to a distant store, reassigning her to an undesirable shift, and terminating her employment on July 19, 2025.

53.     Defendant took these retaliatory personnel actions because Ms. Navarro objected to the unlawful activity, policy, and practice, as demonstrated by the immediate onset of adverse actions after her reports, the escalating sequence of adverse actions, Defendant's assignment of the investigation to the very District Manager whose household was benefiting from the scheme, General Manager Long's July 12, 2025 written acknowledgment, and Defendant's continued retention of Buza.

54.     Defendant's conduct violated § 448.102(3), Florida Statutes.

55.     As a direct and proximate result, Ms. Navarro has suffered the damages described above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) an injunction restraining continued violation of the Florida Private Sector Whistleblower Act; (b) reinstatement to the same or an equivalent position, or, in the alternative, front pay; (c) reinstatement of full fringe benefits and seniority rights; (d) lost wages, benefits, and other remuneration; (e) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable

14

attorneys' fees, costs, and expenses pursuant to § 448.104, Florida Statutes; and (h) such other and further relief as this Court deems just and proper.

## COUNT II

### Taxpayer First Act — Retaliation, 26 U.S.C. § 7623(d)

56.   Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 48 above, as if fully set forth herein.

57.   Ms. Navarro engaged in protected activity under 26 U.S.C. § 7623(d)(1)(A) by providing information regarding an underpayment of tax and, in the alternative, information regarding conduct that she reasonably believed constituted a violation of the internal revenue laws — including the false-identity misattribution of income and wages to another person under a false name and Social Security number, the failure to withhold, report, and pay over taxes on that income, and the generation of false wage and tax information — to persons with supervisory authority over her and to persons working for Defendant with authority to investigate, discover, or terminate misconduct, including her March 2025 reports to management and her telephone report to Gowanloch at Defendant's corporate office.

58.   To the extent a subjective belief is required, Ms. Navarro's belief that the reported conduct constituted a violation of the internal revenue laws was both subjectively held and objectively reasonable.

15

59. Defendant thereafter discharged, threatened, and otherwise discriminated against Ms. Navarro in the terms and conditions of her employment in reprisal for her protected activity, culminating in the termination of her employment on July 19, 2025.

60. Ms. Navarro's protected activity was a contributing factor in the adverse actions, as demonstrated by the immediate onset of the schedule reduction after her reports, the escalating sequence of adverse actions, Defendant's assignment of the investigation to the District Manager whose household was benefiting from the scheme, General Manager Long's July 12, 2025 written acknowledgment, and Defendant's continued retention of Buza.

61. Defendant cannot demonstrate by clear and convincing evidence that it would have taken the same actions in the absence of Ms. Navarro's protected activity.

62. Defendant's conduct violated 26 U.S.C. § 7623(d).

63. As a direct and proximate result, Ms. Navarro has suffered the damages described above, including special damages.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for all relief necessary to make her whole pursuant to 26 U.S.C. § 7623(d)(3), including: (a) reinstatement with the same seniority status that she would have had but for the reprisal; (b) two hundred percent (200%) of the amount of back pay and

16

one hundred percent (100%) of all lost benefits, with interest; (c) compensation for special damages sustained as a result of the reprisal, including emotional distress damages and increased transportation costs; (d) litigation costs, expert witness fees, and reasonable attorneys' fees; (e) prejudgment and post-judgment interest as allowed by law; and (f) such other and further relief as this Court deems just and proper.

## COUNT III

### Fair Labor Standards Act — Retaliation, 29 U.S.C. § 215(a)(3)

64.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 48 above, as if fully set forth herein.

65.    Ms. Navarro engaged in activity protected by 29 U.S.C. § 215(a)(3) by complaining — internally to Defendant's management and through the May 23, 2025 demand letter — that Defendant's manager and supervisor were unlawfully taking and diverting employees' tips, thereby asserting rights protected by the FLSA, including the prohibition in 29 U.S.C. § 203(m)(2)(B) against an employer, manager, or supervisor keeping employees' tips.

66.    Ms. Navarro held a good-faith, objectively reasonable belief that the conduct she opposed violated the FLSA. Her complaints were sufficiently clear and detailed for a reasonable employer to understand them as an assertion of rights protected by the statute.

17

67.     Defendant thereafter subjected Ms. Navarro to materially adverse actions, culminating in the termination of her employment on July 19, 2025.

68.     There is a causal connection between Ms. Navarro's protected activity and the adverse actions, as demonstrated by the temporal proximity between her complaints and the adverse actions — including her termination less than two months after the May 23, 2025 demand letter — the escalating sequence of adverse actions, General Manager Long's July 12, 2025 written acknowledgment, and Defendant's continued retention of Buza.

69.     Defendant's conduct violated 29 U.S.C. § 215(a)(3).

70.     As a direct and proximate result, Ms. Navarro has suffered the damages described above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) lost wages and other compensation; (b) an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b); (c) reinstatement to her former position or, in the alternative, front pay; (d) such legal and equitable relief as may be appropriate, including compensatory damages; (e) prejudgment and post-judgment interest as allowed by law; (f) reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and (g) such other and further relief as this Court deems just and proper.

## COUNT IV

18

## 42 U.S.C. § 1981 — Race Discrimination (Discriminatory Terms and Conditions of Employment)

71.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 17 above, as if fully set forth herein.

72.    Ms. Navarro is Jewish, and her Jewish identity is a racial and ancestral characteristic protected against intentional discrimination under 42 U.S.C. § 1981.

73.    Defendant imposed on Ms. Navarro a discriminatory term and condition of employment because of her Jewish race and ancestry: a standing directive, in effect every shift for the months she worked at the Orange Park store, forbidding her from stating or telling customers that she was Jewish and requiring her to conceal her Jewish identity as a condition of her employment.

74.    Defendant did not impose any comparable concealment requirement on servers outside Ms. Navarro's protected class. Servers who were Caucasian, Hispanic, or African American were not barred from disclosing or expressing their race or ethnicity to customers. Defendant singled out Ms. Navarro for this requirement because she is Jewish, treating her less favorably than similarly situated employees outside her protected class.

75.    The discriminatory directive altered the terms, conditions, and privileges of Ms. Navarro's employment and disadvantaged her, requiring her to

19

suppress her Jewish identity every shift as a condition of her continued employment.

76.   Ms. Navarro's Jewish race and ancestry were the but-for cause of the discriminatory term and condition imposed on her.

77.   Defendant's conduct was intentional and was undertaken with malice or with reckless indifference to Ms. Navarro's federally protected rights.

78.   Defendant's conduct violated 42 U.S.C. § 1981.

79.   As a direct and proximate result, Ms. Navarro has suffered the damages described above.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendant for: (a) back pay and lost employment benefits; (b) reinstatement to her former position or, in the alternative, front pay and benefits; (c) compensatory damages, including damages for emotional pain and suffering, mental anguish, embarrassment, humiliation, loss of dignity, and loss of enjoyment of life; (d) punitive damages; (e) declaratory and injunctive relief; (f) prejudgment and post-judgment interest as allowed by law; (g) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b); and (h) such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

20

80.    Plaintiff hereby demands a trial by jury on all issues so triable as of right, including pursuant to 26 U.S.C. § 7623(d)(2)(A).

Dated: July 23, 2026.

Respectfully submitted,

<u>/s/ Frank M. Malatesta</u>
**Frank M. Malatesta, Esq.**
Florida Bar No. 0097080
MALATESTA LAW OFFICE
871 Venetia Bay Blvd., Suite 235
Venice, Florida 34285
Telephone: (941) 256-3812
Fax: (888) 501-3865
Frank@malatestalawoffice.com
heather@malatestalawoffice.com
Staff@malatestalawoffice.com
*Attorney for Plaintiff*

21